
FILED
AUG 27 2010
DISTRICT COURT
VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANDERSSON GUSTAFSSON )
ADVOKATBYRA KB, )
                              )
        Plaintiff,            )
                              )
v.                            )    Civil Action No.: 1:10-cv-632
                              )
eSCRUB SYSTEMS, INC., *et al.*, )
                              )
        Defendants.           )

## MEMORANDUM OPINION

Before the Court is Defendant John Packard's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 5) and Motion to Dismiss for Failure to State a Claim (Dkt. No. 7). Upon review of the motions and the briefs in support and in opposition, the Court finds that while Plaintiff has pled sufficient facts for the Court to find that it may exercise personal jurisdiction over Defendant Packard, Plaintiff has not sufficiently pled a claim for either misrepresentation or breach of fiduciary duty. As such, Counts II and III against Defendant Packard are dismissed.

### I.     Background

This case is a suit for collection of unpaid legal fees in which Plaintiff Andersson Gustafsson Advokatbyra KB ("Andersson Gustafsson") has sued its former client, eSCRUB Systems, Inc. ("eSCRUB"), along with three individuals associated with the company, Ralph Genuario, Maija Harkonen, and John Packard, who is a former director of eSCRUB.

In its Complaint, Plaintiff alleges three counts. Count I is a breach of contract claim against eSCRUB. Count II is a claim for misrepresentation against eSCRUB, Genuario,

1

Harkonen, and Packard. Lastly, Count III is a claim for breach of fiduciary duty against Genuario, Harkonen, and Packard derivatively on behalf of eSCRUB. Packard moved to dismiss the counts against him for lack of personal jurisdiction and for failure to state a claim. The Court held a hearing on August 13, 2010 as to both motions. The Court took the motions under advisement and now issues this opinion.

All relevant and necessary additional facts of the case will be discussed below in the context of the individual motions.

## II. Personal Jurisdiction

This Court may exercise specific personal jurisdiction over an out-of-state defendant if authorized by Virginia's long-arm statute and application of the long-arm statute is constitutional under the due process clause of the Fourteenth Amendment.[1] *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Given that Virginia's long-arm statute extends jurisdiction to the maximum extent allowable under the due process clause, the two inquiries merge. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir.2002). Virginia is a "single transaction" state. *Kolbe, Inc. v. Chromomodern*, Inc., 211 Va. 736, 180 S.E.2d 664 (1971); Va. Code Ann. §8.01-328.1. "A single act of business can confer jurisdiction provided that it is 'significant' and demonstrates 'purposeful activity' in Virginia." *Prod. Group Int'l v. Goldman*, 337 F.Supp.2d 788, 793 (E.D.Va. 2004).

---

[1] The party invoking the Court's jurisdiction ultimately bears the burden of establishing the necessary jurisdictional facts by a preponderance. In the absence of an evidentiary hearing, however, a plaintiff need only prove a *prima facie* case of personal jurisdiction. "A threshold prima facie finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *Prod. Group Int'l v. Goldman*, 337 F.Supp.2d 788, 793 n. 2 (E.D.Va. 2004).

2

While out-of-state directors of corporations doing business in a forum state are not automatically amenable to personal jurisdiction by virtue of their position, neither are they automatically exempt. In *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 528 (4th Cir. 1987) this Circuit upheld the exercise of personal jurisdiction over nonresident corporate directors of a West Virginia corporation (under West Virginia's long-arm statute), noting that "[e]xcellent reasons exist for allowing a State to assert jurisdiction over non-resident directors of domestic corporations." However, individual directors must still engage in significant purposeful activity directed at the forum state before personal jurisdiction is properly exercised. *See D'Addario v. Geller*, 264 F.Supp.2d 367, 379 (E.D.Va. 2003); *Miller & Rhoads v. West*, 442 F.Supp. 341 (E.D.Va. 1977).[2]

As discussed during the August 13 hearing, Plaintiff has pled sufficient facts to establish a prima facie case of personal jurisdiction. At a minimum, Defendant acted as a director of a corporation with its sole office in Alexandria, Virginia for seven years. In that role, Defendant purposefully interacted with the corporation in Virginia with some frequency, including participating in corporate board meetings in Virginia by telephone. Plaintiff further alleges Defendant aided eSCRUB in seeking and retaining Swedish counsel to assist it in an arbitration in Sweden, which led to the retention of Plaintiff. Once eSCRUB retained Andersson Gustafsson, Defendant had contacts via e-mail and phone with members of the firm, allegedly

---

[2] The focus of the parties' dispute at the August 13, 2010 hearing centered not on whether a Court may exercise jurisdiction over an out-of-state corporate director with sufficient contacts, but rather on how closely to define the inquiry of whether the asserted cause of action "arises from" the defendants contact with the forum state. Plaintiff relied heavily on the more expansive definition offered by this Court in *Production Group International, Inc. v. Goldman*, 337 F.Supp.2d 788 (E.D.Va. 2004), while Defendant argued a more constrained definition, one approaching proximate cause, is appropriate, citing to a portion of this Circuit's opinion in *Consulting Engineers Corp. v. Geometric, Ltd.*, 561 F.3d at 277 (citing *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 943 (E.D. Va. 1991) (offering a narrower definition of "arising from")). Though the Court would note that the proper scope likely lies somewhere between these definitions, resolution of this issue is not required by this Motion given that the Court finds Plaintiff has alleged sufficient jurisdictional facts to establish a *prima facie* case of jurisdiction.

3

reassuring the firm that eSCRUB would pay its legal fees. Notably, Plaintiff's services also included representing eSCRUB in a matter before this Court in Virginia.

While the Court is unable to make a final determination on the issue of personal jurisdiction at this preliminary stage, the Court finds that Plaintiff has alleged sufficient significant contacts with Virginia by Defendant to establish a *prima facie* case of jurisdiction. However, as the remainder of this Opinion makes clear, Plaintiff fails to sufficiently allege a plausible basis for relief against Defendant Packard and thus this action will be dismissed without prejudice as to him.

### III. Count II: "Misrepresentation"

In Count II of the Complaint, Plaintiff asserts a claim against Packard for misrepresentation and fraud. Plaintiff alleges that Packard assisted in a scheme to induce Andersson Gustafsson to provide legal services while all along knowing that eSCRUB would never pay the fees. Specifically, the Complaint alleges the following misrepresentations:

> a. Creating a false illusion of trustworthiness by trading upon the reputation of distinguished, high profile directors;
> b. Creating the false illusion of corporate normality and stability by falsely claiming that eSCRUB had its office in Wilmington, Delaware and also claiming it had hundreds of shareholders;
> c. Creating the false illusion that eSCRUB could and would pay for the services of Anderrson Gustafsson without disclosing its business practice of asserting questionable malpractice claims in excess of the amount of unpaid invoices.

Complaint ¶ 39.

Under Federal Rule of Civil Procedure 9(b), claims for fraud must be pled with particularity. To satisfy this heightened pleading standard, the plaintiff must allege the time, place, and content of the false representations, the person making the representations, and what

4

was gained as a result of the misrepresentations. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). While the plaintiff must plead the circumstances surrounding fraud with particularity, the conditions of a person's mind such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b).

In order to state a cause of action for fraud under Virginia law,[3] the plaintiff must plead that there was a "false representation of a material fact, made intentionally and knowingly, with intent to mislead." *Sales v. Kecoughtan Housing Co.*, 279 Va. 475, 481, 690 S.E.2d 91 (2010). "An action based on fraud may not be predicated on unfulfilled promises or statements about future events." *Id.* Additionally, the statement that serves as the foundation for an action in fraud must be a misrepresentation of an existing fact and not the expression of an opinion. *Id.*

In this case, the Court finds that Plaintiff has not sufficiently pled a cause of action for fraud against Packard. The Complaint does not allege with any specificity exactly what fraud Packard committed. In Count II, which is against all four Defendants, Plaintiff does not identify who among eSCRUB, Genuario, Harkoken, and Packard made the misrepresentations alleged in Paragraph 39. The paragraph attempts to lay out what misrepresentations were made, but not who made them. The only statement made in Count II which attributes any fraud to Packard individually is the allegation that Packard encouraged the continuation of Andersson Gustafsson's services by "assuring Kadelburger that the invoices would be paid."[4] The Court finds that the statement that Packard made "assurances" does not satisfy the requirement that Plaintiff include the content of the fraud in its pleading. Plaintiff must be more specific about

---

[3] If Plaintiff believes that the law of another jurisdiction is applicable, Plaintiff may re-plead its claim under the applicable law. Plaintiff, however, maybe only re-plead if it believes that it can satisfy its burden to allege facts sufficient to state all elements of the claim as required under the law of the jurisdiction Plaintiff argues is appropriate.
[4] This allegation that Plaintiff made "assurances" is alleged in other portions of the Complaint as well. *See* Complaint ¶ 25.

5

what explicitly Packard said to induce Andersson Gustafsson to continue its legal services.[5] Additionally, Plaintiff has failed to allege that Packard made these representations with the intent to defraud Andersson Gustafsson out of receiving payment for their legal services. While the Complaint alleges that Packard knew or should have known about the falsity of the statements, it does not allege his intent. As such, the Court finds that Plaintiff has not sufficiently pled a cause of action for fraud. Therefore, Count II is dismissed without prejudice as to Packard.

### IV.     Count III: Breach of Fiduciary Duty

In Count III of its Complaint, Plaintiff asserts a claim for "Breach of Fiduciary Duty" filed derivatively against Packard. As Plaintiff explains in its Brief in Opposition, "eSCRUB's board of directors breached their fiduciary duty to Andersson Gustafsson because they continued to incur more debt while the corporation was insolvent." Pl. Br. at 9-10. Though the parties are equally indefinite on the choice of law applicable to this Count, regardless of which law applies, Plaintiff fails to state a claim upon which relief may be granted.

Under Delaware law, creditors may assert a derivative claim for breach of fiduciary duty against an insolvent corporation's directors. *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) ("[C]reditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties."). This principle is based on the concept that a "corporations' insolvency

---

[5] The Court notes that some of the pleadings and declarations which were submitted in connection with the Motion to Dismiss give more details as to the content of the assurances made by Packard. Specifically, in Packard's declaration, he states that he "informed Mr. Kadelburger that [he] believed that eSCRUB would be able to pay his firm's outstanding invoices once a Department of Energy contract to build a prototype plant in Chicago had been funded." Packard Decl. ¶ 8. Even if the Court were to consider these documents, Plaintiff has still not sufficiently pled a cause of action for fraud under Virginia law. The statements made by Packard are not misrepresentations of an existing fact. Instead, they are his opinion and belief about the occurrence of a future event, namely that eSCRUB would get a Department of Energy Contract and that it would then be able to pay its legal fees. This is not actionable fraud.

makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value," and thus those creditors ought to be permitted to stand in the shoes of shareholders in asserting a claim against its directors. *Id.* ("Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent.").

While Plaintiff labels its claim as a "derivative" action, Count III does not properly state a derivative claim. First, as noted, the underlying premise in allowing a creditor to assert a derivative claim is that an existing creditor's interests are imperiled by a director's breach of a duty which further diminishes the corporation's assets and corresponding ability to repay the creditor. *Id.* at 101-102. Here, Plaintiff asks the Court to deem the act that rendered Plaintiff a creditor – the nonpayment of its fees – to simultaneously constitute a "breach of duty" owed to Plaintiff derivatively. If that were permitted, every nonpayment of a debt by a corporation with cash flow difficulties would subject individual directors to suit by the creditor. This is clearly not the purpose of permitting a creditor to bring a derivative action under Delaware law, and begins to look instead like a direct claim against the director.

Ordinarily, "determining whether a stockholder's claim is derivative or direct. . . must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). This analysis should be much the same in a creditor's derivative action, wherein a court still must ask the same questions, but decide them as between the corporation or the creditor, who is standing the place of the shareholders. This is because, "[a]t all times, claims of this kind belong to the corporation itself because even if the

7

improper acts occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly." *Gheewalla*, 930 A.2d at 102 (citing *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 776 (Del. Ch. 2004)).

Thus, as pled, Plaintiff's claim fails to account for the primary focus of a derivative action – harm incurred by the corporation, not the creditor. Importantly, the *Gheewalla* court explicitly recognized that its holding "precludes a direct claim arising out of a purported breach of a fiduciary duty owed to that creditor by the directors of an insolvent corporation," *Id.* at 103, even though a director might "display such a marked degree of animus towards a particular creditor with a proven entitlement to payment" that they might otherwise expose themselves to liability under a fiduciary duty claim. *Id.* (citing and rejecting that possibility left open in *Production Resources Group*, 863 A.2d at 798).

Further, to the extent that Plaintiff asserts a claim for "deepening insolvency," the Delaware Court of Chancery recently expressly rejected such a claim. *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., et al.*, 906 A.2d 168 (Del. Ch. 2006) ("[t]hat the strategy results in continued insolvency and an even more insolvent entity does not in itself give rise to a cause of action."). While the court went on to note that "[t]he rejection of an independent cause of action for deepening insolvency does not absolve. . . causes of action for breach of fiduciary duty and for fraud," merely re-labeling a cause of action as a claim for "breach of fiduciary duty" for the same predicate conduct will not stand. *Id.* at 205. Rather, Plaintiff must actually allege a breach of fiduciary duty separate from "continuing to incur more debt while the corporation was insolvent." Pl. Br. at 9-10; *see also Trenwick*, 906 A.2d at 205 ("If a plaintiff cannot state a claim that the directors of an insolvent corporation acted disloyally or without due care in

8

implementing a business strategy, it may not cure that deficiency simply by alleging that the corporation became more insolvent as a result of the failed strategy").

Under Virginia law, the result is the same. In Virginia, directors "may be liable to an insolvent company's creditors when the officers abuse their positions during insolvency by preferring themselves, over other creditors, in the repayment of loans made to the corporation." *Bank of Am. v. Musselman*, 222 F.Supp.2d 792, 798 (E.D.Va. 2002) (citing *Mills v. Miller Harness Co.*, 229 Va. 155, 157-58, 326 S.E.2d 665 (1985); *Darden v. Lee*, 204 Va. 108, 112, 129 S.E.2d 897 (1963)). This right of recovery stems from Virginia's statutory prohibition on fraudulent conveyances. *Id*. Further, in Virginia creditors can also avail themselves of the "trust fund doctrine" which recognizes an equitable lien in favor of creditors against directors and officers of insolvent corporations who procure funds through self dealing and allows a suit directly against officers and directors to recover those funds. *Musselman*, 222 F. Supp. 2d at 799; *Ashworth v Hagan Estates*, 165 Va. 151, 181 S.E. 381 (1935). In either instance, some form of self dealing must be alleged, which Plaintiff fails to do here.

Moreover, like Delaware, it is unlikely Virginia would recognize a claim for "deepening insolvency." *See In re James River Coal Co.*, 360 B.R. 139, 179-80 (Bankr. E.D.Va. 2007) (analyzing Virginia law and concluding that Virginia would not recognize such a claim and "[t]he inability to state a claim that the directors of an insolvent corporation breached the fiduciary duty they owed to the corporation and its creditors cannot be remedied by alleging that the corporation became more insolvent as a result of a failed business strategy").

Accordingly, Count III of Plaintiff's Complaint fails to plausibly state a claim upon which relief may be granted and therefore is dismissed without prejudice as to Packard.

## V. Conclusion

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss for Lack of Personal jurisdiction and grants Defendant's Motion to Dismiss for Failure to State a Claim. Counts II and III of the Complaint are dismissed as against Defendant Packard.

Alexandria, Virginia
August 27, 2010

/s/
Liam O'Grady
United States District Judge