

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANDERSON GUSTAFSSON )
ADVOKATBYRA, KB, )
)
Plaintiff, )
)
v. ) Civil Action No. 1:10-cv-632
)
eSCRUB SYSTEMS INC., )
)
Defendants. )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant John Packard's Motions to Dismiss the First Amended Complaint for Failure to State a Claim, and Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. Nos. 35 and 37). Upon review of the motions and the briefs in support and opposition, the court finds plaintiff has plead sufficient facts to support the exercise of personal jurisdiction over Defendant Packard. The Motion to Dismiss for lack of personal jurisdiction is hereby DENIED. For the reasons explained herein, the Motion to Dismiss for Failure to State a Claim is GRANTED IN PART and DENIED IN PART.

**I. Background**

This case arises from a dispute over unpaid legal fees in which Plaintiff Andersson Gustafsson Advokatbyra KB ("Andersson Gustafsson") has sued its former client, eSCRUB Systems, Inc. ("eSCRUB"), along with three individuals associated with the company, Ralph Genuario, Maija Harkonen, and John Packard, who is a former director of eSCRUB. In its initial Complaint, dated June 2010, Plaintiff alleged three counts. Count I was a breach of contract claim against eSCRUB. Plaintiff has since obtained a default judgment against eSCRUB. Count

1

II was a claim for misrepresentation against Genuario, Harkonen, and Packard. Count III was a claim for breach of fiduciary duty against Genuario, Harkonen, and Packard derivatively on behalf of eSCRUB. Packard moved to dismiss the counts against him for lack of personal jurisdiction and for failure to state a claim. This Court denied Defendant Packard's motion to dismiss on jurisdictional grounds by Order and accompanying Memorandum Opinion dated August 27, 2010 (Dkt. No. 22, 23). Counts II and III were however dismissed without prejudice as to Defendant Packard for failure to state a claim (Dkt. No. 23).

Plaintiff filed its First Amended Complaint on October 25, 2010 re-asserting the claims in Counts II and III against Defendant Packard (Dkt. No. 34). Acknowledging this Court's previous denial of his motion to dismiss for lack of personal jurisdiction, Defendant Packard now moves to dismiss on these grounds to preserve his objection to jurisdiction, but has filed no further evidence or argument in support thereof. Packard also moves to dismiss for failure to state a claim as to Counts II and III of the First Amended Complaint.

## II. Personal Jurisdiction

The factual allegations in the First Amended Complaint to establish personal jurisdiction in this matter have not changed from the initial complaint. As Plaintiff has alleged sufficient contacts with Virginia to establish a prima facie case of personal jurisdiction for the reasons set out in this Court's previous Memorandum Opinion (Dkt. No. 22), the motion to dismiss for lack of personal jurisdiction is denied.

## III. Count II: Misrepresentation

The Motion to Dismiss for failure to state a claim is DENIED as to Count II.

2

Count II of the amended complaint alleges a claim for misrepresentation sounding in tort under Swedish law. Plaintiff argues that pleading in this manner is proper because "the relevant misrepresentations were heard or read and ... the damage occurred" in Sweden. First Amended Complaint (FAC) ¶35. The First Amended Complaint provides considerable additional detail relevant to the alleged misrepresentations, which were fatally absent from the initial complaint. Whether fraud can be proved remains a concern, but at this stage the complaint alleges sufficient facts to raise a question in the Court's mind and to elevate the complaint beyond the level of speculation .

Plaintiff alleges that Packard assisted in a scheme to induce Andersson Gustafsson to provide legal services while all along knowing that eSCRUB would never pay the fees. Specifically, the Complaint alleges the following misrepresentations:

> a. Creating a false illusion of trustworthiness by trading upon the reputation of distinguished, high profile directors;
> b. Creating the false illusion of corporate normality and stability by falsely claiming that eSCRUB had its office in Wilmington, Delaware and also claiming it had hundreds of shareholders;
> c. Creating the false illusion that eSCRUB could and would pay for the services of Anderrson Gustafsson without disclosing its business practice of asserting questionable malpractice claims in excess of the amount of unpaid invoices. FAC ¶ 39.

Plaintiff alleges that Packard, while in California, participated in the misrepresentation by stating in a telephone conversation with an attorney partner at Andersson Gustafsson (in Sweden) that eSCRUB would pay Plaintiff's outstanding invoices. FAC ¶ 40. Plaintiff claims that this statement misrepresented eSCRUB's willingness to pay the legal fees incurred and was "intentionally made to mislead, or negligently made to induce" Plaintiff to continue performing legal services for which the fees it generated would never be paid. *Id.*

As this Court stated in the prior opinion dismissing this matter, in order to state a cause of action for fraud under Virginia law, the plaintiff must plead that there was a "false representation

3

of a material fact, made intentionally and knowingly, with intent to mislead." *Sales v. Kecoughtan Housing Co.*, 279 Va. 475, 481, 690 S.E.2d 91 (2010). "An action based on fraud may not be predicated on unfulfilled promises or statements about future events." *Id.* Additionally, the statement that serves as the foundation for an action in fraud must be a misrepresentation of an existing fact and not the expression of an opinion. *Id.* The statements alleged to have been made by Packard do not appear to be misrepresentations of an existing fact, and Plaintiff therefore may not be able to maintain a fraud complaint under the law of Virginia when discovery has identified the full expanse of the promise. Plaintiff also contends that Swedish law should govern the misrepresentation claim it asserts in Count II. The Court finds that the choice of law for tort and contract based claims should be determined with the benefit of a more complete record pending discovery. Therefore, the motion to dismiss for failure to state a claim is DENIED as to Count II.

## IV. Count III: Breach of Fiduciary Duty

Count III of the First Amended Complaint (FAC) re-asserts Plaintiff's claim for Breach of Fiduciary Duty against Packard derivatively on behalf of eSCRUB. The complaint now states, "the wrongful actions of the individual defendants that breached their fiduciary duties injured eSCRUB by increasing the amount of unpaid debts of eSCRUB, further weakening its financial position." FAC ¶46. Plaintiff alleges that Packard's misrepresentations regarding eSCRUB's willingness and ability to pay render him a specific tortfeasor against whom an injured party (Plaintiff) may be afforded relief. (Plaintiff's Memorandum in Opposition, at 11).

While Plaintiff labels this claim a "derivative" action, Count III of the First Amended Complaint still falls short of a properly stated derivative claim, and therefore fails to state a claim

4

upon which relief may be granted. Under Delaware law, creditors may assert a derivative claim for breach of fiduciary duty against an insolvent corporation's directors. *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) ("[Creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties."). This principle is based on the concept that a "corporations' insolvency makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value," and thus those creditors ought to be permitted to stand in the shoes of shareholders in asserting a claim against its directors. *Id.* ("Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent.").

First, as noted, the underlying premise in allowing a creditor to assert a derivative claim is that an existing creditor's interests are imperiled by a director's breach of a duty which further diminishes the corporation's assets and corresponding ability to repay the creditor. *Id.* at 101-102. Just as it did in the initial complaint, Plaintiff now asks the Court to grant relief based upon the act that rendered Plaintiff a creditor- the nonpayment of legal fees - as simultaneously constituting a "breach of duty" owed to Plaintiff derivatively *on the basis of specific improper conduct by the defendant* (Plaintiff's Memorandum in Opposition, at 11). This cannot stand under Delaware law. In *Ghewalla*, the Supreme Court of Delaware made this rule clear, stating "While there may well be the basis for a direct claim arising out of contract or tort, our holding today precludes a direct claim arising out of a purported breach of a fiduciary duty owed to that creditor by the directors of an insolvent corporation." 930 A.2d 92, 103 (Del. 2007)

If that were permitted, every nonpayment of a debt by a corporation with cash flow difficulties would subject individual directors to suit by the creditor. This is clearly not the

purpose of permitting a creditor to bring a derivative action under Delaware law, and begins to look instead like a direct claim against the director. Ordinarily, "determining whether a stockholder's claim is derivative or direct... must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031,1033 (Del. 2004). Here, a court still must ask the same questions, but decide them as between the corporation or the creditor, who is standing the place of the shareholders. This is because, "[a]t all times, claims of this kind belong to the corporation itself because even if the improper acts occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly." *Gheewalla*, 930 A.2d at 102 (citing *Prod. Res. Group, L.L.C. v. NCTGroup, Inc.*, 863 A.2d 772, 776 (Del. Ch. 2004)). As plead, Plaintiff's claim is asserted directly against Packard, an officer of the corporation, and not the corporation itself. Plaintiff claims that such an action may be maintained because it is directed only at Packard and not at other directors who are not alleged to have participated in any misrepresentation. The Court finds this argument unconvincing, as it reinforces the characterization of the claim as a direct, rather than a derivative action.

Further, to the extent that Plaintiff asserts a claim for "deepening insolvency," the Delaware Court of Chancery has made such claims impossible. *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., et al*, 906 A.2d 168 (Del. Ch. 2006) ("[t]hat the strategy results in continued insolvency and an even more insolvent entity does not in itself give rise to a cause of action."). While the court went on to note that "[t]he rejection of an independent cause of action for deepening insolvency does not absolve... causes of action for breach of fiduciary duty and for

fraud," merely re-labeling a cause of action as a claim for "breach of fiduciary duty" for the same predicate conduct will not stand. *Id.* at 205. In the previous memorandum opinion, this Court instructed Plaintiff that a breach of fiduciary duty must actually be alleged separate from "increasing the amounts of unpaid debt of eSCRUB." FAC ¶46.

Under Virginia law, the result is the same. In Virginia, directors "may be liable to an insolvent company's creditors when the officers abuse their positions during insolvency by preferring themselves, over other creditors, in the repayment of loans made to the corporation." *Bank of Am. v. Musselman*, 222 F.Supp.2d 792, 798 (E.D.Va. 2002) (citing *Mills v. Miller Harness Co.*, 229 Va. 155, 157-58, 326 S.E.2d 665 (1985); *Darden v. Lee*, 204 Va. 108, 112, 129 S.E.2d 897 (1963)). This right of recovery stems from Virginia's statutory prohibition on fraudulent conveyances. *Id.* Further, in Virginia creditors can also avail themselves of the "trust fund doctrine" which recognizes an equitable lien in favor of creditors against directors and officers of insolvent corporations who procure funds through self-dealing and allows a suit directly against officers and directors to recover those funds, but only in circumstances alleging self-dealing or other unlawful conduct. *Musselman*, 222 F. Supp. 2d at 798. As in the initial complaint, Plaintiff fails to allege that Packard was engaged in self-dealing, and therefore Count III fails as to him.

Moreover, like Delaware, it is unlikely Virginia would recognize a claim for "deepening insolvency." *See In re James River Coal Co.*, 360 B.R. 139, 179-80 (Bankr. E.D.Va. 2007) (analyzing Virginia law and concluding that Virginia would not recognize such a claim and "[t]he inability to state a claim that the directors of an insolvent corporation breached the fiduciary duty they owed to the corporation and its creditors cannot be remedied by alleging that the corporation became more insolvent as a result of a failed business strategy"). Accordingly,

Count III of Plaintiff's First Amended Complaint fails to plausibly state a claim upon which relief may be granted and therefore is DISMISSED.

February 15, 2011
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge